UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUKE RAMIREZ, | : | |
| | : | |
| PLAINTIFF, | : | NO. |
| | : | |
| VS. | : | |
| | : | |
| THE TOWN OF OXFORD, | : | |
| GEORGE R. TEMPLE, | : | |
| THE CONNECTICUT STATE | : | |
| DEPARTMENT OF EMERGENCY | : | |
| SERVICES AND PUBLIC PROTECTION | : | |
| and | : | |
| DANIEL SEMOSKY, | : | |
| | : | |
| DEFENDANTS. | : | FEBRUARY 24, 2021 |

## <u>C O M P L A I N T</u>

### <u>COUNT ONE</u>

1.  This is an action for money damages to redress the deprivation by the

defendants of rights secured to the plaintiff by the laws of the United States and the

State of Connecticut.  The defendants subjected the plaintiff to, inter alia, discrimination,

hostile work environment and retaliation, in violation of the rights secured to the plaintiff

by the provisions of Title VII of the Civil Rights Act of 1964, as amended by the Civil

Rights Act of 1991, 42 U.S.C.A.§ 2000e, the Americans with Disabilities Act of 1990, 42

U.S.C. §§ 12111 et seq., As Amended; and the Rehabilitation Act of 1973, 29 U.S.C. §§

794 et seq.

The defendants further subjected the plaintiff to violations his rights to equal protection, secured to the plaintiff by the provisions of the United States Constitution, before the Court pursuant to 42 U.S.C.A.§ 1983.  The municipal defendant has further incurred municipal liability.

The defendants further subjected the plaintiff to discrimination, hostile work environment and retaliation, in violation of the rights secured to the plaintiff by the provisions of the Connecticut Fair Employment Practices Act, C.G.S.A. § 46a-60, et seq.; to negligent supervision and to the intentional infliction of emotional distress, in contravention of the laws of the State of Connecticut, invoked pursuant to the Court's supplemental jurisdiction.

2.  Jurisdiction of this Court is invoked under the provisions of Title 28 United States Code §§1331, 1343(3) and 1367(a), and Title 42 United States Code §§1981A, 1983, 1988 and 2000e-5(f).

3.  The defendants recklessly, intentionally and maliciously discriminated against the plaintiff and treated him differently from similarly situated employees not of the plaintiff's race, ethnicity, disability or perceived disability, or who had not complained about unlawful conduct.  The defendants' treatment of the plaintiff was due to or motivated by plaintiff's race, ethnicity, disability or perceived disability, or in retaliation for his complaints about unlawful conduct.

4.  At all times mentioned herein, the plaintiff, Luke Ramirez, was and is an adult resident of Newtown, Connecticut.  The plaintiff is an Hispanic male of Puerto Rican ancestry.

5.  During all times mentioned in this Complaint, the defendant Town of Oxford was and is a municipal corporation organized under the General Statutes of the State of Connecticut.

6.  The Town of Oxford is an employer with more than 50 employees.

7.   During all times mentioned in this Complaint, defendant George R. Temple was First Selectman, Chief of Police, chief executive officer, employee, officer and agent of the defendant Town of Oxford.

8.  During all times mentioned in this Complaint, defendant Connecticut State Department of Emergency Services and Public Protection ("DESPP") was and is a Department of the State of Connecticut comprised of six divisions, including the Connecticut State Police.  The defendant DESPP is an employer, which employs approximately 1424 people.

9.  The defendant Town of Oxford employs members of the DESPP to work in conjunction with the Oxford Police Department as the supervising authority of the defendant Town's Police Department.

10.   Defendant Daniel Semosky was a Sergeant in the Connecticut State Police, assigned to work in conjunction with the Oxford Police Department as the supervising authority of the defendant Town's Police Department.

11.   As such, Semosky is an employee, officer or agent of the defendant Town of Oxford.

12.   The conduct of Semosky, Temple and the individual employees of the defendants Town of Oxford exercising supervisory oversight over the plaintiff constitutes conduct of the defendants Town of Oxford as employer of the plaintiff.

13.   The defendants Town of Oxford and DESPP are sued in their official capacity.

14.   Defendants Temple and Semosky are sued in both their individual and official capacities.

15.   During all times mentioned in this Complaint, the defendants Temple and Semosky were acting under color of law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the United States, the State of Connecticut, and the Town of Oxford.

16.   The defendants Temple and Semosky acted intentionally or recklessly.

17.   At all times relevant to the instant Complaint, the plaintiff, Luke Ramirez, was employed by the defendants as a Police Officer in the Town of Oxford.

18.   For an extended period of time continuing to the present, the plaintiff has been subjected to an ongoing pattern of harassment, discrimination, retaliation and disparate treatment based upon his disabilities or perceived disabilities, his race and in retaliation for his protected complaints.  The defendants have unfairly punished, disciplined and suspended the plaintiff and have treated him differently than similarly situated Police Officers not of the plaintiff's race, who are not or are not regarded as disabled, or who have not complained about defendants' unlawful conduct.

19.   The plaintiff is a one of only three Hispanic police officers in the Oxford Police Department.

20.   The plaintiff is a qualified individual with a disability, or is perceived as such by the defendants.

21.   The defendants are aware of the plaintiff's disabilities or perceive him as disabled.

22.   At all times relevant to the instant complaint, the plaintiff was able to perform the essential functions of his employment with or without reasonable accommodation.

23.   On or about January 24, 2016, the plaintiff was injured while on duty.  As a result, the plaintiff was out of work for several months.

24.   In 2017, the plaintiff underwent surgery to his back, and was out of work for approximately one-half year.

25.  Upon his return to work, the defendants forced the plaintiff to undergo and conditioned his return to work upon, inter alia, a full physical examination, a drug test, blood testing, screening for tuberculosis, a hearing test and a pulmonary test.

26.  None of the tests which the defendants forced the plaintiff to undergo before allowing him to return to work were related to his back.

27.  No other officer was forced by the defendants to undergo such testing, unrelated to the medical condition, prior to being allowed to return to work.

28.  The collective bargaining agreement to which the defendants, the plaintiff and his fellow officers are bound restricts the medical testing to which an employee returning to work may be subjected by defendants to the condition which caused the absence from work.

29.  The defendants subjected the plaintiff to such broad and impermissible testing for improper and discriminatory reasons: the plaintiff's disability or being perceived as disabled; his race; his prior, protected complaints about defendants' unlawful conduct.   The defendants' goal is to drive the plaintiff from his employment with them.

30.  On or about November 6, 2018, the plaintiff experienced a flare up of his back condition, and was again out of work.

31.  On January 2, 2019, the plaintiff was contacted by defendant Town's Finance Director, and agent of defendant Town of Oxford Jim Hilva, who informed him that the

defendant Town would be reducing the amount of pay that he would be receiving.  In the same communication, Hilva encouraged the plaintiff "to apply for 90% disability", thereby ending his employment with the defendants.

32.  On February 13, 2019, the plaintiff wrote to defendant Town's Finance Director Hilva because defendant Town had stopped paying him his monthly stipend allowance for declining insurance coverage with the defendant.

33.  In this writing, the plaintiff expressly stated that the defendant Town was engaging in unfair conduct against him based upon his disability or being perceived as disabled. The plaintiff wrote in his complaint: "To make it clear, I don't feel as I am being treated fairly ever since I injured my back."  The plaintiff requested that the defendant Town help him and treat him "without judgment or prejudice."

34.  On February 14, 2019, defendant Town's Finance Director Hilva replied in writing that he had forwarded the plaintiff's complaint to the First Selectman of the defendant Town, defendant George R. Temple.

35.  On February 13, 2019, the plaintiff wrote to AnnMarie Juliano Cummings, a bookkeeper for defendant Town, about not receiving his insurance stipend.  When asked whether this was a mistake or ordered by Hilva, Cummings confirmed that Hilva instructed that the stipend not be paid to the plaintiff.

36.  Hilva claimed to the plaintiff that is was a "clerical error".  Cummings, however, agreed that that was "b.s.".  Cummings texted: "Jim said not to pay!"

37.  Once again, the plaintiff complained in writing that he was "being treated unfairly" and the defendants were making the "whole process very hard" for him.

38.  In response, Cummings stated that some personnel at the defendant Town are "underhanded".

39.  On February 21, 2019, the plaintiff was released by his physician to return to full duty.

40.  In advance of his expected return to work, on February 13, 2019 and on February 20, 2019 the plaintiff contacted defendant Semosky to arrange the details of his return. The plaintiff asked defendant Semosky to set a date for plaintiff's recertification as a police officer to ensure there would be no lapse.  The plaintiff also inquired about uniform items and the shifts he would be working.

41.  Despite his readiness to return to work, Semosky stonewalled the plaintiff. Semosky refused to schedule the recertification, brushed off his questions about uniforms and shift assignments, and claimed that the plaintiff would need "approval" from the defendant Town in order for him to return to work.

42.  Even then, defendant Semosky informed the plaintiff, he would have to try to "fit [the plaintiff] into the schedule".

43.  Once again, the defendants were erecting unlawful impediments to the plaintiff's return to work due to his disability or being perceived as disabled; his race; his prior, protected complaints about defendants' unlawful conduct.

44.   After the plaintiff met all of the requirements fabricated for him by defendants Semosky and the Town, he again informed defendant Semosky that he was prepared to go "back to full duty starting today boss", and that he was "eager to get back" to work.

45.   The plaintiff presented written authorization to the defendants clearing him for return to work.

46.   Thereafter and for the first time on February 21, 2019, defendant Semosky claimed that the plaintiff would have to undergo some unspecified "exam" before defendants would allowed him to return to work.

47.   At 4:59 p.m. on the date that the plaintiff was medically cleared to return to work, defendant Semosky texted the following: "Luke you can't work yet per the Townhall [sic] I have to set you up for and [sic] Town exam".  Defendant Semosky continued: "Which I will set up as soon as possible".

48.   The plaintiff was shocked by this unlawful ambush, and asked of the baseless requirement, "What exam, Sgt?" The plaintiff asked Semosky to generate a letter with a directive detailing what it was that the defendant Town was requiring, so that he could understand and comply.  Defendant Semosky's reply was, "I'm sure the Townhall can get you something".

49.   Once again, the defendants were erecting unlawful impediments to the plaintiff's return to work, and his ability to earn a salary and overtime income was adversely effected.  The plaintiff informed defendant Semosky that he would be filing a

formal  complaint about the loss of overtime and the process that defendants were "drag[ging] on" against him.

50.  On February 25, 2019, Hilva of defendant Town stated that in order to return to work, the plaintiff would now have to undergo both a physical and a psychological examination.  These were to be scheduled by defendant Semosky, according to Hilva.

51.  At the same time, defendant Semosky told the plaintiff that he could not return to work until the Town scheduled the physical and psychological examinations.

52.  The plaintiff again complained in writing to the defendants, specifically complaining that they "keep adding conditions" and that defendants' "unbelievable" conduct was "driving [him] crazy" and he was "not sure what to do."  Unlawfully keeping him out of work, depriving him of overtime, adding unfair, invasive and impermissible condition after condition, and generally giving him the runaround effectively constituted "unpaid suspension."

53.  The defendants set up a series of tests and examinations at Griffin Hospital and demanded that the plaintiff undergo the invasive and unnecessary tests.  The tests included, inter alia, a full physical, drug testing, blood testing, screening for tuberculosis, a hearing test and a pulmonary test.

54.  The plaintiff was also compelled to undergo a sweeping evaluation in the guise of a fitness for duty evaluation.  This test is not administered to any other officers in the defendants' police department in this manner, and was never before administered

to any officer in the defendants' police department.  In fact, the defendant Town of Oxford does not even have such a test.  This "test" was designed specifically for the plaintiff – specifically designed to cause the plaintiff to fail and not be returned to work.

55.   The only other officer to have been subjected to the fit for duty test is another injured officer of the defendant, Peter Hopson, who is suffering similar mistreatment by the same defendants and similarly has taken legal action against the Town and Semosky.

56.   The defendants attempted to subject a third officer to the for duty test prior to returning to work after being deemed cleared to return by his own physician.  When legal counsel got involved, the test, and all other tests except an evaluation of the specific injury were cancelled as unlawful and not authorized by the collective bargaining agreement.

57.   The defendants' gross misconduct toward the plaintiff and the abusive use of medical testing precipitated action against the defendant Town.  A June 7, 2019 Memorandum of Understanding placed specific restrictions on the defendants' use of medical examinations, in an effort to prevent the abuse suffered by the plaintiff.  When an officer of the defendant returns from any leave due to illness or injury, the defendant Town may send the officer to a fitness for duty examination.  The examination, however, must be limited to the illness or injury that caused the officer to be out of work.

58.  On or about April 29, 2019, the plaintiff passed a functional evaluation test, a four hour physical endurance and strength test.  Confirmation of this was presented to the defendants.  Once again, the plaintiff was medically cleared to return to work.

59.  On May 17, 2019, the defendants' physician at Griffin Hospital cleared the plaintiff to return to full duty.

60.  As before, the defendants found reasons to delay and postpone the plaintiff's return to full duty.

61.  Although the plaintiff's certification would not expire until June 30, 2019,  the defendants refused to return the plaintiff to full duty.  Rather, they made the plaintiff take recertification classes, and caused him to lose out on his full pay, and on substantial overtime.

62.  As early as February, 2019 the plaintiff requested enrollment in recertification classes so that he would suffer no lapse of certification.  The defendants intentionally ignored the plaintiff's requests, and did not so enroll him.  Defendants did, however, send several other officers to the mandatory classes, intentionally not enrolling the plaintiff.

63. Once again, by delaying his enrollment in recertification classes, the defendants were erecting unlawful impediments to the plaintiff's return to work due to his disability or being perceived as disabled; his race; his prior, protected complaints about defendants' unlawful conduct.

64.  When the plaintiff had no classes scheduled, was available to work and requested to do so, defendant Semosky refused, stating that the plaintiff was on administrative leave until he received all his recertification credits.  At the same time, the defendants permitted the several other officers who were taking recertification classes to work, and none were placed on administrative leave.

65.  As his certification had yet to expire, there was no legitimate reason whatsoever for the defendants to refuse to allow the plaintiff to return to work.

66.  On or about May 24, 2019, the plaintiff again complained to defendants in writing about their conduct toward him. The plaintiff complained that he was being treated differently in the manner in which he was treated related to his injuries, his return to work and defendants' refusal to return him to full duty.

67.  The defendants did not return the plaintiff to full duty until May 26, 2019. The threat of having to undergo unnecessary and invasive psychological examination still hangs over the plaintiff to the present.

68.  The defendants have engaged in continuous harassment of the plaintiff, consisting of discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment.

69.  On or about August 22, 2019, the plaintiff and two other officers were issued ammunition for use on the practice range.  In October, 2019, it became evident that the

defendants intend to impose discipline upon two of the three officers who used and stored the ammunition in the usual manner.

70.  The two officers subject to discipline are the plaintiff and Hopson, who has experienced issues markedly similar to the plaintiff  upon returning to work after being out injured.  The plaintiff and Hopson are the only two officers of the defendants ever compelled to undergo the sweeping Fit for Duty evaluation and the unrelated examinations to return to work.  Both have been vocal in their complaints about the defendants conduct.

71.  The defendants are attempting to punish the plaintiff for his protected complaints about defendants' unlawful conduct.  The punishment is severe.

72.   On or about February 19, 2020, the defendants commenced a criminal investigation of the plaintiff, without probable cause or other lawful basis to do so.  Said criminal investigation could result in the plaintiff being subjected to arrest and prosecution as a criminal, which would result in the loss of his employment, and indeed, loss of the plaintiff's ability ever to be employed as a police officer.

73.  The criminal investigation of the plaintiff was undertaken to harass, retaliate against and to cause further harm to the plaintiff.

74.  During the course of the investigation, the plaintiff was forced to remain on administrative leave, and continue to lose significant employment benefits, including overtime.

75.  On or about July 7, 2020, a Judge of the Superior Court of the State of Connecticut determined that no probable cause exists to arrest the plaintiff.  This determination was based upon the information provided to the Court by the defendants in support of their effort to obtain the plaintiff's arrest.

76.  Despite the Court's determination, the defendants continued to refuse to allow the plaintiff to return to work.  This refusal was undertaken to further harass, retaliate against and to cause further harm to the plaintiff.

77.  On July 9, 2020, the defendants subjected the plaintiff to an Internal Affairs Investigation on the same issue which the Court had already determined that no probable cause exists.  The defendants continued to refuse to allow the plaintiff to return to work.

78.  The Internal Affairs Investigation was undertaken by the defendants to harass, retaliate against and to cause further harm to the plaintiff.

79.  During the same period of time, another similarly situated police officer who was the subject of an Internal Affairs Investigation by the defendants, ultimately sustained, was permitted to continue to work and not placed on administrative leave by them.  That police officer had not filed complaints againt the defendants, as the plaintiff has.

80.  On or about December 7, 2020 the plaintiff learned that the defendants' Internal Affairs Investigation of him was Unsubstantiated.

81.   The plaintiff was once again cleared of the false charges leveled at him by the defendants.  Nevertheless, the defendants still refused to immediately return the plaintiff to his employment duties.

82.   On or about October 25, 2019, the defendant Oxford's First Selectman Temple subjected the plaintiff to racial discrimination.  Upon seeing both the plaintiff and the only other Hispanic male in the defendant Town's Police Department working at an Oxford High School football game, Temple asked them, loudly enough to be heard by witnesses, "What is this, Hispanic night?"

83.   Temple made other comments, which upset the plaintiff, and caused a witness to ask what he meant by the comments.

84.   The plaintiff has exhausted his administrative remedies prerequisite to suit, and has received a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities and a Right to Sue Letter from the Equal Employment Opportunities Commission.

85.   For an extended period of time continuing to the present, the plaintiff has been subjected to an ongoing pattern of harassment, discrimination, hostility and disparate treatment based upon his disabilities or perceived disabilities, his race and in retaliation for his protected complaints to and about the defendants.

86.  The conduct of the defendants and defendants' agents, officers or employees, continued and was ongoing until the termination of the plaintiff, and until such time was continuous, persistent and unabated.  The actions of the defendants therefore constitute a continuing course of conduct up to and including the present.

87.  The conduct of the defendants Town of Oxford and Connecticut Department of Emergency Services and Public Protection constitutes violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e.

88.  As a result of the actions of the defendants, the plaintiff has suffered loss of his rights; humiliation and ridicule; severe economic losses, including but not limited to loss of income and employment benefits; loss of employment and employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing in the Police Department, in the eyes of prospective law enforcement employers and in the public at large; and has suffered severe emotional and mental distress.

## COUNT TWO

1 - 86.  Paragraphs 1 through 86 of Count One are hereby made Paragraphs 1 through 86, respectively, of Count Two.

87.  The conduct of the defendants Town of Oxford and Connecticut Department of Emergency Services and Public Protection constitutes violation of the Americans with

Disabilities Act of 1990, 42 U.S.C. §§ 12111 et seq., As Amended; and the

Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq.

88.  As a result of the actions of the defendants, the plaintiff has suffered loss of

his rights; humiliation and ridicule; severe economic losses, including but not limited to

loss of income and employment benefits; loss of employment and employment

opportunities, advancement and training; loss of self esteem, peace of mind, emotional

and physical well being; loss of reputation and standing in the Police Department, in the

eyes of prospective law enforcement employers and in the public at large; and has

suffered severe emotional and mental distress.

## COUNT THREE

1 - 86.  Paragraphs 1 through 86 of Count One are hereby made Paragraphs 1

through 86 respectively, of Count Three.

87.  The conduct of the defendants Temple and Semosky constitutes violation of

the right to equal protection, secured to the plaintiff by the provisions of the United

States Constitution, before the Court pursuant to 42 U.S.C.A.§ 1983.

88.  As a result of the actions of the defendants, the plaintiff has suffered loss of

his rights; humiliation and ridicule; severe economic losses, including but not limited to

loss of income and employment benefits; loss of employment and employment

opportunities, advancement and training; loss of self esteem, peace of mind, emotional

and physical well being; loss of reputation and standing in the Police Department, in the

eyes of prospective law enforcement employers and in the public at large; and has suffered severe emotional and mental distress.

### COUNT FOUR

1 - 86.  Paragraphs 1 through 86 of Count One are hereby made Paragraphs 1 through 86, respectively, of Count Four.

87.  The conduct of the defendants Town of Oxford and Connecticut Department of Emergency Services and Public Protection constitutes violation of the provisions of the Connecticut Fair Employment Practices Act, C.G.S.A. § 46a-60, et seq.

88.  As a result of the actions of the defendants, the plaintiff has suffered loss of his rights; humiliation and ridicule; severe economic losses, including but not limited to loss of income and employment benefits; loss of employment and employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing in the Police Department, in the eyes of prospective law enforcement employers and in the public at large; and has suffered severe emotional and mental distress.

### COUNT FIVE

1 - 86.  Paragraphs 1 through 86 of Count One are hereby made Paragraphs 1 through 86 respectively, of Count Five.

87.  The conduct of the defendants constitutes negligent supervision in violation of the laws of the State of Connecticut.

88.  As a result of the actions of the defendants, the plaintiff has suffered loss of his rights; humiliation and ridicule; severe economic losses, including but not limited to loss of income and employment benefits; loss of employment and employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing in the Police Department, in the eyes of prospective law enforcement employers and in the public at large; and has suffered severe emotional and mental distress.

## COUNT SIX

1 - 86.  Paragraphs 1 through 86 of Count One are hereby made Paragraphs 1 through 86 respectively, of Count Six.

87.  The actions of the defendants as detailed in the foregoing paragraphs were extreme and outrageous.

88.  The actions of the defendants were intentional.

89.  The actions of the defendants were likely to cause emotional distress, and that emotional distress was severe.

90.  The actions of the defendants constitute the intentional infliction of emotional distress.

91.   As a result of the actions of the defendants, the plaintiff has suffered loss of his rights; humiliation and ridicule; severe economic losses, including but not limited to loss of income and employment benefits; loss of employment and employment

opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing in the Police Department, in the eyes of prospective law enforcement employers and in the public at large; and has suffered severe emotional and mental distress.

<u>**COUNT SEVEN**</u>

1 - 86.  Paragraphs 1 through 86 of Count One are hereby made Paragraphs 1 through 86 respectively, of Count Seven.

87.  The defendant Town of Oxford is the highest policy setting authority on matters related to the instant complaint, including, inter alia the hiring, training, supervision, investigation and discipline of its Police Department personnel, including all defendants and those individuals named in the instant Complaint.

88.  A municipal policy or custom exists in the defendant Town as a result of the municipality's deliberate indifference to the violation of constitutional rights.

89.  The actions and conduct of the defendant Town, inter alia, by and through the defendants, evidence an official policy or custom which has caused the plaintiff to be subjected to a denial of one or more of his constitutional rights.

90.  As such, the defendant Town of Oxford has incurred municipal liability.

91. As a direct and proximate result of the conduct of the defendant Town, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, severe emotional distress, loss of personal and professional reputation,

humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

   **WHEREFORE**, the plaintiff claim judgment against the defendants as follows:

   A.  Compensatory damages;

   B.  Punitive damages;

   C.  Attorney fees and the costs of this action pursuant to all applicable provisions of state and federal law;

   D.  Equitable relief pursuant to 29 U.S.C.A.§§ 626(b) and (c), 633a(b) and (c) and all other applicable provisions of state and federal law;

   E.  Such other relief as this Court shall consider to be fair and equitable.

## <u>CLAIM FOR JURY TRIAL</u>

The plaintiff claims trial by jury of all issues in this case.

22

THE PLAINTIFF


BY_____/s/_____
      WILLIAM S. PALMIERI
      Juris No. 409481
      Law Offices of William S. Palmieri, L.L.C.
      110 Whitney Avenue
      New Haven, CT 06510
      (203) 562-3100
      (203) 909-6006 (fax)
      wpalmieri@hotmail.com
      His Attorney