UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUKE RAMIREZ,<br>    *Plaintiff*,<br><br>    v.<br><br>THE TOWN OF OXFORD, GEORGE R. TEMPLE, THE CONNECTICUT STATE DEPARTMENT OF EMERGENCY SERVICES AND PUBLIC PROTECTION, and DANIEL SEMOSKY,<br>    *Defendants*. | No. 3:21-cv-240 (JAM) |

**ORDER GRANTING UNOPPOSED MOTIONS TO DISMISS**

Plaintiff Luke Ramirez is a Hispanic police officer employed by the Town of Oxford, Connecticut. Ramirez has filed this lawsuit against four defendants: the Town of Oxford; its first selectman and chief of police George R. Temple; the Connecticut State Department of Emergency Services and Public Protection (DESPP); and Sergeant Daniel Semosky of the Connecticut State Police.

Ramirez claims that, following a serious back injury he sustained in 2016, one or more of the defendants required him to pass a number of physical and psychological tests before allowing him to return to work. He further claims that he was disciplined and retaliated against for complaints about having to undergo these tests and that he was subject to unwarranted criminal and administrative investigation.

Ramirez brings claims of disparate treatment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, against Oxford and DESPP; violations of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12111 *et seq*., and the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq*., against Oxford and DESPP;

1

violation of equal protection pursuant to 42 U.S.C. § 1983 against Temple and Semosky; violations of the Connecticut Fair Employment Practices Act (CFEPA) against Oxford and DESPP; negligent supervision and intentional infliction of emotional distress against all defendants; and municipal liability against Oxford.

The defendants have moved to dismiss Ramirez's complaint.[1] Ramirez has not filed any objection or other response to the motions to dismiss. Nor has he moved for an extension of time to do so. I will grant the motions to dismiss for substantially the reasons stated by the defendants in their motions.

## BACKGROUND

The facts set forth below are taken from the complaint and are assumed to be true only for the purpose of resolving the motions to dismiss.

Ramirez is a Hispanic man of Puerto Rican ancestry.[2] He works for Oxford as a police officer.[3] There are two other Hispanic officers in the Oxford police department.[4]

In January 2016, Ramirez hurt his back while on duty and was out of work for several months.[5] In 2017, he had back surgery, and was out of work for approximately another six months.[6] Before returning to work, he was required to undergo a full physical examination, a drug test, blood testing, screening for tuberculosis, a hearing test, and a pulmonary test.[7] Ramirez says that none of these tests related to his back, and that no other officer had to undergo testing unrelated to a medical condition prior to being allowed to return to work.[8]

---

[1] Doc. #30 (DESPP motion); Doc. #31 (Oxford motion).
[2] Doc. #1 at 3 (¶ 4).
[3] *Id*. at 4 (¶ 17).
[4] *Id*. at 5 (¶ 19).
[5] *Ibid*. (¶ 23).
[6] *Ibid*. (¶ 24).
[7] *Id*. at 6 (¶ 25).
[8] *Ibid*. (¶¶ 26-27).

In November 2018, Ramirez's back condition flared up, and he again took off time from work.[9] Oxford's finance director, Jim Hilva, informed Ramirez that he would receive reduced pay and encouraged him to apply for 90% disability.[10]

In February 2019, Hilva discontinued Ramirez's monthly stipend allowance which he had received for declining insurance coverage through Oxford.[11] Ramirez complained in writing to Hilva about being treated unfairly since his back injury.[12] Hilva claimed that the suspension of Ramirez's stipend payments was a clerical error, but an Oxford bookkeeper told Ramirez that Hilva had instructed that his stipend not be paid and described Hilva's conduct as "underhanded."[13] Ramirez again complained in writing.[14]

About a week later, Ramirez's physician cleared him to return to full duty.[15] But when Ramirez sought to be recertified as a police officer, Sergeant Semosky refused to schedule the recertification without approval from Oxford.[16] When Ramirez presented written authorization clearing him for return to work, Semosky told him he would have to undergo an exam first.[17] Ramirez told Semosky that he would be filing a formal complaint about the extended process of returning to work and his resulting loss of overtime.[18]

Hilva then informed Ramirez that he would have to undergo a physical and psychological examination before returning to work.[19] Hilva told Ramirez that Semosky would schedule the

---

[9] *Ibid.* (¶ 30).
[10] *Id.* at 6-7 (¶ 31).
[11] *Id.* at 7 (¶¶ 32, 35-36).
[12] *Ibid.* (¶¶ 32-33).
[13] *Id.* at 7-8 (¶¶ 35-38).
[14] *Id.* at 8 (¶ 37).
[15] *Id.* at 8 (¶ 39).
[16] *Ibid.* (¶ 41).
[17] *Id.* at 9 (¶¶ 45-48).
[18] *Id.* at 9-10 (¶ 49).
[19] *Id.* at 10 (¶ 50).

exams, while Semosky told Ramirez that Oxford would have to schedule them.[20] Ramirez again complained in writing, stating that by constantly "adding conditions" the defendants were effectively placing him on an "unpaid suspension."[21]

Ramirez ultimately underwent a full physical, drug testing, blood testing, a screening for tuberculosis, a hearing test, and a pulmonary test at Griffin Hospital, as well as a comprehensive fitness-for-duty evaluation.[22] Only one other officer, Peter Hopson, was subject to this fitness-for-duty test.[23] A third officer was not required to take the fitness-for-duty test after his attorney intervened.[24] In June 2019, Oxford signed a Memorandum of Understanding stating that it would limit fitness-for-duty examinations to the illness or injury that caused an officer to be out of work.[25]

In April 2019, Ramirez passed a functional evaluation involving a four-hour physical endurance and strength test.[26] He presented confirmation of his results and clearance from his physician to Oxford.[27] But Oxford required him to take recertification classes before returning to work, though he had been requesting recertification since February and his certification was not scheduled to expire until June 30, 2019.[28] Even before his certification expired, Ramirez was placed on administrative leave while he took recertification classes, whereas other officers taking recertification classes were permitted to work and were not placed on leave.[29]

In May 2019, Ramirez again complained to Oxford that he was being treated differently

---

[20] *Ibid*. (¶¶ 50-51).
[21] *Ibid*. (¶ 52).
[22] *Id*. at 10-11 (¶¶ 53-54).
[23] *Id*. at 11 (¶ 55). Ramirez does not allege that Peter Hopson is Hispanic.
[24] *Ibid*. (¶ 56).
[25] *Ibid*. (¶ 57).
[26] *Id*. at 12 (¶ 58).
[27] *Ibid*. (¶¶ 58-59).
[28] *Ibid*. (¶¶ 61-62).
[29] *Ibid*. (¶¶ 64-65).

in the manner in which he was treated related to his injuries, his return to work, and Oxford's refusal to return him to full duty.[30] Two days later, Ramirez was returned to full duty.[31]

In August 2019, Ramirez and two other officers were issued ammunition for use on the practice range.[32] Ramirez and Hopson—who had also complained about being subject to the fitness-for-duty test—were subsequently disciplined for storing ammunition in the usual manner.[33]

In October 2019, First Selectman Temple saw Ramirez and another Hispanic officer working at a high school football game. Temple asked them, "What is this, Hispanic night?"[34] Temple also made other unspecified comments which upset Ramirez and caused a witness to ask what Temple meant by those comments.[35]

In February 2020, Ramirez was placed on administrative leave during the course of a criminal investigation into his conduct.[36] Ramirez does not describe the nature of this investigation and conclusorily alleges that the "defendants commenced" this investigation despite the lack of "probable cause or other lawful basis to do so" and that it was "undertaken to harass, retaliate against and to cause further harm" to him.[37]

In July 2020, a Connecticut court found no probable cause for Ramirez's arrest.[38] Oxford then conducted an internal affairs investigation against Ramirez based on the same conduct.[39] Ramirez was kept on administrative leave, while another officer under investigation was

---

[30] *Ibid*. (¶ 66).
[31] *Ibid*. (¶ 67).
[32] *Ibid*. (¶ 69).
[33] *Id*. at 13-14 (¶¶ 69-70).
[34] *Ibid*. (¶ 82).
[35] *Ibid*.
[36] *Id*. at 14 (¶¶ 72, 74).
[37] *Ibid*. (¶¶ 72-73).
[38] *Id*. at 15 (¶ 75).
[39] *Ibid*. (¶ 77).

permitted to return to work.[40] The investigation against Ramirez ultimately found the charges to be "Unsubstantiated."[41] But Oxford still refused to immediately return Ramirez to work.[42]

Ramirez filed this action in February 2021. In August 2021, DESPP and Sergeant Semosky moved to dismiss the complaint on the grounds that Ramirez lacks an employment relationship with them, that he failed to exhaust his administrative remedies and failed to state a claim under Title VII, and that he is barred by the Eleventh Amendment from suing under the ADA, § 1983, and state law.[43] Oxford and Temple similarly moved to dismiss on the grounds that Ramirez failed to state a claim under Title VII, CFEPA, and § 1983, that he failed to exhaust his administrative remedies under CFEPA, that he failed to allege Temple's personal involvement for purposes of § 1983, and that his state law claims are barred by governmental immunity under state law.[44] On November 1, 2021, DESPP and Sergeant Semosky filed a reply brief noting that Ramirez has failed to respond to their motion to dismiss.[45]

## DISCUSSION

The case has a somewhat unusual posture. Ramirez has counsel who has filed a complaint on his behalf. The defendants have filed motions to dismiss. But Ramirez has failed to file any objection or other response to the motions to dismiss, and Ramirez has failed to take any action to seek an extension of time to file a response even after one of the defendants filed a notice more than a month ago highlighting his failure to file a response. The circumstances suggest a significant likelihood that Ramirez and his counsel have decided in light of the strength of the arguments advanced in the defendants' motions to dismiss that there is no point in further

---

[40] *Ibid.* (¶ 79).
[41] *Ibid.* (¶ 80).
[42] *Id.* at 16 (¶ 81).
[43] Doc. #30.
[44] Doc. #31.
[45] Doc. #34.

pursuing this litigation.

Local Rule 7(a)(2) provides that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint cannot rely on conclusory allegations. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). A complaint that engages in a threadbare recital of the elements of a cause of action but that fails to include supporting factual allegations does not establish plausible grounds for relief. *Ibid.*

### *Title VII*

Ramirez's claims under Title VII cannot proceed for several reasons. First, Ramirez has not adequately demonstrated the exhaustion of his administrative remedies. Ramirez alleges that he received a release of jurisdiction from the Connecticut Commission on Human Rights and Opportunities and a right to sue letter from the Equal Employment Opportunities Commission.[46] But he has not attached either the release or the right to sue letter to his complaint or by way of any response to the motions to dismiss. This is grounds for dismissal. *See Dragon v. Connecticut*, 2014 WL 6633070, at *2 (D. Conn. 2014).

Second, Ramirez has not adequately pleaded an employment relationship with DESPP or Semosky—a prerequisite to his Title VII claims against those defendants. *See Casanova v. Cook*, 2021 WL 4711459, at *6 (D. Conn. 2021). The complaint alleges that DESPP is "an employer" and that the "Town of Oxford employs members of the DESPP to work in conjunction with the

---

[46] *Id*. at 16 (¶ 84).

Oxford Police Department as the supervising authority of the [] Town's Police Department."[47] It further states that Sergeant Semosky's conduct in "exercising supervisory oversight over the plaintiff constitutes conduct of the [] Town of Oxford as employer of the plaintiff."[48] But the fact that Oxford may employ DESPP officers to supervise its police department does not plausibly suggest that an Oxford police officer like the plaintiff is an employee of DESPP or of any DESPP supervisor such as Sergeant Semosky. *See Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226–27 & n.10 (2d Cir. 2008), *as amended* (Apr. 22, 2008) (employment relationship requires at a minimum that a defendant hires and compensates plaintiff). A Title VII claim "may be brought only against the employing entity," not against "any individual responsible for the discrimination." *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019).

Third, the complaint fails to state a claim under Title VII. That is principally because Ramirez does not allege facts to support a plausible inference that any of the adverse consequences he faced were because of his race. The only racially specific treatment Ramirez alleges is First Selectman Temple's "Hispanic night" comment to Ramirez and another Hispanic police officer on duty at a high school football game.[49] But Ramirez has not alleged that this comment or Temple's involvement more generally had anything to do with the obstacles he previously experienced when returning to work following his back injury or the subsequent criminal and internal investigations into his conduct.

Nor has Ramirez alleged facts to plausibly show that he was singled out for testing requirements or discipline on the basis of race; to the contrary, he alleges that a non-Hispanic officer faced the same testing requirements and was similarly disciplined for storage of

---

[47] Doc. #1 at 3 (¶¶ 8-9).
[48] *Id.* at 4 (¶ 12).
[49] *Id.* at 16 (¶ 82).

8

ammunition. *See Milledge v. City of Hartford*, 2020 WL 3510813, at *2–3 (D. Conn. 2020) (dismissing disparate treatment claim because plaintiff failed to show a connection to his race). Finally, Ramirez has not alleged a violation of Title VII based on his placement on administrative leave (and attendant loss of overtime) pending criminal charges and an internal investigation, because such suspensions do not constitute adverse employment actions absent allegations that Ramirez's regular pay was suspended or that Oxford acted unreasonably and at odds with its own disciplinary procedures by suspending him. *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).

Title VII also prohibits employers from subjecting employees to a hostile work environment—that is, a "work environment … so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). Again, the sole allegation linked to Ramirez's race is Temple's comments at the football game, most of which the complaint does not detail. The complaint does not allege facts to plausibly suggest a working environment permeated with race-based hostility or ridicule.

Ramirez's retaliation claim fares no better. Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed … an unlawful employment practice" or "made a charge" under Title VII. 42 U.S.C. § 2000e–3(a); *see Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Ramirez alleges that he was kept on administrative leave during an internal affairs investigation while another officer subject to an internal investigation who had not made similar complaints was permitted to return to work. But Ramirez has not alleged any of the surrounding factual content needed to show that he and the other officer were similarly situated in all material respects so as to support the inference that the difference in their treatment was based on his past complaints. *See Redd v. New York State Div.*

*of Parole*, 923 F. Supp. 2d 371, 390–91 (E.D.N.Y. 2012). Nor has Ramirez alleged that his past complaints made clear to the defendants that he was objecting to conduct that he believed was discrimination of the kind that is prohibited under Title VII as opposed to general frustration occasioned by the delay in restoring him to his position. *See Grewcock v. Yale New Haven Health Servs. Corp.*, 293 F. Supp. 3d 272, 282 (D. Conn. 2017).

### *Equal protection*

Ramirez alleges claims of intentional discrimination in violation of the Equal Protection Clause against Sergeant Semosky and Temple. But for the same reasons discussed above and detailed in the defendants' motions to dismiss, he has failed to allege facts to plausibly suggest that these two defendants discriminated against him in violation of his rights under the Equal Protection Clause. In addition, he does not allege facts to show Temple's personal involvement in any of the adverse actions against him. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (establishing a § 1983 violation against a supervising official requires showing that the official committed a constitutional violation through his own individual actions); *Naumovski*, 934 F.3d at 214 ("[A] plaintiff pursuing a claim for employment discrimination under § 1983 rather than Title VII must establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile environment.").

### *Americans with Disabilities Act (ADA) and Rehabilitation Act*

Ramirez claims that he was subject to discrimination in violation of the ADA and the Rehabilitation Act. *See Natofsky v. City of New York*, 921 F.3d 337, 345 (2d Cir. 2019) (discussing similar standard governing both claims); *Barrett-Browning v. Connecticut Dep't of Correction*, 2019 WL 3412173, at *3 (D. Conn. 2019) (discussing similarity in standards in the employment context). The Second Circuit has explained that in order to establish a *prima facie*

violation under the ADA and the Rehabilitation Act, a plaintiff must show that (1) "he is a qualified individual with a disability"; (2) "[the defendant] is an entity subject to the acts"; and (3) "he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities or [the defendant] otherwise discriminated against him by reason of his disability." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). The problem for Ramirez is that he has not alleged facts plausibly supporting the inference that the defendants required him to pass various tests before returning to work because of any intent to discriminate on the basis of his disability; it is not enough to allege simply that he had a disability and that he was later subject to adverse action, absent facts to suggest that the adverse action was *because* of the disability.

The facts alleged do not plausibly suggest animus based on disability rather than due to a legitimate need of the defendants to ensure that Ramirez was medically cleared and professionally certified for active-duty work. *See Rosenquist v. Ottaway Newspapers, Inc.*, 90 Fed. App'x 564, 565 (2d Cir. 2004) (employer's decision to subject reporter to independent medical examination when he sought to return to work after suffering a stroke was justified by business necessity); *Aka v. Jacob K. Javits Convention Ctr. of New York*, 2011 WL 4549610, at *17 (S.D.N.Y. 2011) (classifying "an employer's need to maintain a staff that is capable of working" as a "legitimate, nondiscriminatory reason[] for an adverse employment action").

### *Eleventh Amendment sovereign immunity*

Ramirez's claims for money damages under Title I of the ADA, section 1983, and state law against DESPP and against Semosky in his official capacity are barred by Eleventh Amendment sovereign immunity because DESPP is an instrumentality of the State of Connecticut. *See Lee v. Dep't of Child. & Fams.*, 939 F. Supp. 2d 160, 165 (D. Conn. 2013)

(ADA); *Utecht v. Maniago*, 2014 WL 7404562, *4 (D. Conn. 2014) (section 1983 and state law). To the extent that Ramirez seeks prospective injunctive relief against DESPP and Semosky under the exception to Eleventh Amendment immunity as allowed under *Ex Parte Young*, 209 U.S. 123 (1908), he does not allege facts to show any ongoing discrimination against him on the basis of race or disability.[50]

### *State law claims*

Ramirez's only remaining claims are state law claims. It is well settled that courts should generally decline to exercise pendent jurisdiction over remaining state law claims after federal claims have been dismissed. *See Klein & Co. Futures, Inc. v. Bd of Trade of N.Y.C.*, 464 F.3d 255, 262 (2d Cir. 2006). At this time, therefore, I decline to exercise supplemental jurisdiction over Ramirez's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the reasons stated above, the Court GRANTS the motions to dismiss (Docs. #30, #31). Because it appears that Ramirez does not wish to litigate this action, the Clerk of Court shall close this case. In the event that the Court is mistaken about Ramirez's wishes, then by **January 10, 2022** he may file a motion to re-open this action along with an amended complaint that cures the deficiencies identified in this ruling.

It is so ordered.

Dated at New Haven this 13th day of December 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[50] The Eleventh Amendment does not preclude a cause of action against DESPP for money damages under the Rehabilitation Act, in contrast to Title I of the ADA, because the State of Connecticut has waived its sovereign immunity by continued acceptance of federal funds under the Rehabilitation Act. *See Barrett-Browning v. Dep't of Correction*, 2020 WL 5118132, at *4 (D. Conn. 2020).